# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACK ZATZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 05 C 5233 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jack Zatz ("plaintiff") appeals the Commissioner ("Commissioner") of Social Security's denial of Disability Insurance Benefits ("DIB") for his spinal and leg pain and associated impairments as a result of a spinal injury and subsequent surgery. Plaintiff seeks review of the Administrative Law Judge's ("ALJ") determination that plaintiff is not disabled and that plaintiff can perform "light duty" work. For the reasons set forth below, and findings consistent with this opinion, plaintiff's motion is denied [dkt. 29] and the Commissioner's final decision is affirmed.

## PROCEDURAL HISTORY

On February 17, 2000, plaintiff filed an application for DIB alleging disability since September 22, 1999.[1] On May 12, 2000, the claim was initially denied and then denied once again upon reconsideration.[2] On March 9, 2000, a hearing was held in Oakbrook Terrace, Illinois at which the plaintiff appeared and testified.[3] On June 25, 2001, ALJ Richard J. Boyle determined that

---

[1] R. 17.
[2] R. 17.
[3] *Id.*

1

plaintiff was not entitled to a period of disability or DIB under sections 216(I) and 223 of the Social Security Act.[4] On August 28, 2002, plaintiff requested a review of the Hearing decision.[5] On July 19, 2005, the Appeals Council of the Social Security Administration denied the request for review.[6] On October 21, 2005, plaintiff filed the complaint at issue here with the United States District Court of Northern Illinois.[7]

STATEMENT OF FACTS

**A.  Introduction and Medical Evidence**

The facts set forth under this subsection provide a brief review of plaintiff's background and the events which led to his application for DIB. They are derived from the medical record, which the ALJ reviewed at the hearing and considered in its entirety when rendering his decision.

Plaintiff was a 52 year old male at the time the complaint was filed.[8] Plaintiff has a high school education and two years of college.[9] Plaintiff worked 30 years for United Airlines as a customer service representative and was responsible for curbside baggage check-in.[10] Plaintiff would typically lift baggage that weighed 50 pounds or more, and would often work overtime to supplement his income.[11] In September 1999, plaintiff suffered a back injury.[12] In October 1999, plaintiff had a MRI of the lumbar spine that revealed a herniated disc at T10-T11 on the left, and a loose disc fragment posterior to the L2 vertebral body, which caused some narrowing of the neural

---

[4] R. 20.
[5] R. 13.
[6] R. 4.
[7] R. 1.
[8] R. 17.
[9] R. 17.
[10] *Id.*
[11] R. 67, 252.
[12] R. 18.

2

foramina at the L2-L3 level on the right.[13] In January 2000, an examination revealed L5 spondylolysis with associated Grade I L5-S1 spondylolisthesis, a condition in which a vertebra slips forward and onto a bone below it, at the L5-S1 level.[14] At the time, plaintiff complained of severe right anterior leg pain with numbness and underwent two epidurals and physical therapy but continued to have persistent pain. At this time surgery was recommended.[15]

On February 10, 2000, plaintiff underwent surgery for L2-L3 right sided hemilaminotomy, lateral recess decompression, foraminotomy with decompression of the right L3 nerve root, and excision of the venous complex.[16] On February 29, 2000, plaintiff's physician, Richard S. Rabinowitz, M.D., noted that plaintiff's preoperative back complaints were completely gone.[17] On March 20, 2000, physical therapist notes showed that plaintiff complained of back pain while doing squats as part of a physical therapy program.[18] In an assessment for the purpose of determining plaintiff's residual functional capacity ("RFC"), dated May 5, 2000, state physicians found that plaintiff had exertional limitations that included the abilities to: (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) stand and /or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday; (4) sit (with normal breaks) for a total of about 6 hours in an 8 hour workday; and (5) no limitations to push and or pull (including operation of hand and/or foot controls), other than as shown for lifting and or carrying.[19] For postural limitations plaintiff could occasionally: (1) climb ramp/stairs/ladder/rope/scaffolds; (2) balance; (3) stoop; (4)

---

[13] R. 18.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] R. 159.

kneel; (5) crouch; (6) crawl.[20] The report also listed no manipulative limitations; no visual limitations; no communicative limitations; and no environmental limitations.[21] Ernest C. Bone, M.D., one of two state physicians used exclusively for determining plaintiff's RFC, wrote at the end of the assessment: "[b]ased on the file, he is recovering from surgery and should continue to improve; by 9/2000, he should be able to do med[ium] work activity."[22] A June 1, 2000 MRI showed herniation of T10-T11, spondylitic changes at L5-S1 with bulging disc at L3-L4 and L4-L5.[23] Nonetheless, on June 27, 2000, Dr. Rabinowitz released plaintiff to work with a 20 pound lifting limit, a six hour work day for four days per week.[24] On September 26, 2000, a lumbar myelogram and post myelogram CT, and a January 9, 2001, MRI showed bilateral pars defects, Grade I spondylolisthesis of L5 on S1, and associated bilateral foraminal stenosis.[25] An October 10, 2000, treatment note from Dr. Rabinowitz stated that the plaintiff complained of right thigh weakness and numbing pain, but the back was dramatically improved.[26] On November 29, 2000, Donald T. Kuhlman, M.D., a treating neurologist, reported that plaintiff was walking up to five miles a day for exercise, although plaintiff explained that his legs "gave out" one to two times per mile.[27] Dr. Kuhlman's impression was right radicular dysfunction.[28] Plaintiff did not return to full or part-time work after his injury, despite receiving permission from his doctor to return to light duty, part-time work, as previously noted.[29]

---

[20] R. 160.
[21] R. 161-62.
[22] R. 165.
[23] R. 18
[24] R. 18.
[25] *Id.*
[26] R. 19.
[27] R. 18.
[28] R. 18.
[29] R. 235-36.

4

**B.     The March 9, 2000 Hearing**

At the hearing on March 9, 2001 before ALJ Richard Boyle, plaintiff answered specific questions about his perceived pain, abilities, and daily routines. The ALJ asked if plaintiff could drive long distances and plaintiff answered that he could not but testified that he drove 25 to 30 minutes to be at the hearing.[30] When asked about leg pain, plaintiff responded that he was in constant pain even though it had gotten better since his back surgery but the pain had not gone away.[31] Plaintiff then spoke of three drugs that he took for pain (Vicodin ES, Celebrex, and Neurontin). At the time of the hearing, plaintiff was taking Neurontin only, even though it worked just some of the time and did not completely eliminate the pain.[32]

Plaintiff then testified that he was limited to lifting 20 pounds and experienced pain sitting or laying on the right side of his back.[33] Plaintiff testified that he used a cane to walk after injuring his back at work, and continued to use the cane for a two month period after his back surgery, but had not used one since.[34] Plaintiff testified that he did not feel that his back had improved since the surgery.[35]

Plaintiff testified that he could: (1) walk up to 30 minutes; (2) stand for an hour or two; (3) definitely lift 20 pounds; (4) go down stairs (go up stairs with difficulty); (5) do some chores around the house like sweeping, making beds; and (6) groom himself unaided.[36] Plaintiff also testified that

---

[30] R. 330.
[31] R. 238.
[32] R. 237-39.
[33] R. 241.
[34] R. 243.
[35] R. 243.
[36] R. 248-50.

he had no problems with his arms, hands, and fingers.[37] He testified that he could bend with difficulty, and that he could do a job that required him to sit five to six hours a day if he did not have to sit for more than 30 minutes at a time.[38]

Plaintiff testified that as part of physical therapy, he was walking up to five miles per day until increasing levels of pain made him change to his current level of 30 minutes per day.[39] Plaintiff testified that he used equipment at the physical therapy center after walking, for leg strength training.[40] Plaintiff explained that the program he followed at the time of the hearing was the same one Dr. Rabinowitz instituted and that he followed for nine months immediately following his back surgery.[41] Plaintiff reported that he had seen improvement in the strength of his legs since embarking on the therapy.[42] Along with exercise, plaintiff testified that his daily routine consisted of dropping off his kids to school, running errands, doing assorted duties around the house, picking up the kids from school, and assisting them with after school activities like soccer and homework.[43]

## STANDARD OF REVIEW

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual determinations are entitled to deference.[44] The Court will uphold the ALJ's decision if it is supported by substantial evidence and is free from legal error.[45] Substantial evidence means "such evidence as a reasonable mind might accept as adequate to support a conclusion."[46] Where conflicting evidence

---

[37] R. 248.
[38] R. 248, 259.
[39] R. 247.
[40] R. 253.
[41] R. 253.
[42] *Id.*
[43] R. 255-56.
[44] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[45] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).
[46] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

allows reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the courts.[47] Even so, the decision of the Commissioner is not entitled to unlimited judicial deference. An ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.[48] The Court will conduct a critical review of the evidence and will not uphold the ALJ's decision if it lacks evidentiary support or an adequate discussion of the issues.[49]

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled.[50] The ALJ must consider: (1) whether the claimant is presently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.[51] A finding of disability requires an affirmative answer at either step three or step five, while a negative answer at any step other than step three precludes a finding of disability.[52]

## ANALYSIS

In his motion, plaintiff argues that the ALJ's decision must be reversed or remanded because the ALJ erred in finding that: (1) plaintiff was not disabled in step-three of the five-step process; and

---

[47] *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).
[48] *Clifford*, 227 F.3d at 870 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).
[49] *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford*, 227 F.3d at 869; *Steele*, 290 F.3d at 940).
[50] *See* 20 C.F.R. §§ 404.1520, 416.920.
[51] *Id.*
[52] *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

(2) plaintiff was able to perform "light work" as defined by the Social Security Act.

**A.      Plaintiff was not Disabled at Step 3 of the 5 Step Process**

Plaintiff argues that the ALJ's analysis was perfunctory and misses the mark by referring to Listing 1.01, which is a general heading for the listing of musculoskeletal impairments, instead of referring to Listing 1.04 which addresses disorders of the spine.[53] In the ALJ's written opinion, he determined that, "plaintiff has severe residuals of a back injury and back surgery, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."[54] Plaintiff's argument that the ALJ looked only at Listing 1.01 lacks merit since Listing 1.01 is a general heading. This listing's purpose is to introduce the section of musculoskeletal impairments. The ALJ made clear that, "[t]he medical evidence does not include signs and findings satisfying all of the criteria of *any* section in Listing 1.01 for musculoskeletal impairments..."[55] Since Listing 1.04 is a subpart of the musculoskeletal impairments category, a better reading of what the ALJ wrote is that he looked at **all** sections within the musculoskeletal impairments category including Listing 1.04.

The principle test of disability within the musculoskeletal impairments category is the inability to walk unaided. Specifically, "...impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a handheld assistive device(s)..."[56] Additionally, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out

---

[53] R. 18.
[54] R. 19.
[55] R. 18 (emphasis added).
[56] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00.

activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school."[57]

At the March 9, 2000 hearing, plaintiff testified that he was walking up to five miles per day but reduced that amount to 30 minutes per day due to pain.[58] Plaintiff also testified that he does other physical therapy after his daily walk and has other assorted duties and chores throughout the day that include driving his kids to and from school.[59] Although plaintiff complains of pain associated with his injury, his testimony at the hearing, and the record shows, that pain does not hinder his activities in a way that is consistent with a disabled person as defined by the Social Security Act.[60]

Plaintiff then argues that the ALJ erred in not finding that all of plaintiff's symptoms in total would equal a listing, and consequently, a finding for disability. "Where the plaintiff is unable to meet all of the requirements of a listed impairment, it may be possible to obtain a determination of disability at this stage by showing that the plaintiff's impairment is 'medically equivalent' to the most similar listed impairment."[61] "In order to establish medical equivalence to a similar listed impairment, it will be necessary for the plaintiff to show that his or her medical findings are at least equal in severity and duration to the listed findings for that impairment."[62] Although the ALJ must consider the opinion of claimant's physician(s) on the issue of whether a claimant's impairment meets or equals a listing, the final responsibility for deciding medical equivalence rests with the ALJ.[63]

Although plaintiff argues that the ALJ erred by not finding that his impairment was medically

---

[57] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00.
[58] R. 247-48.
[59] R. 249-56.
[60] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00.
[61] 20 C.F.R. § 404. 1526(1987). *See, e.g.*, *Guardino v Bowen*, 662 F.Supp 781 (S.D. N.Y. 1987); *Waite v Bowen*, 819 F.2d 1356 (7th Cir. 1987); *Williams v Bowen,* 664 F.Supp 1200 (N.D. Ill. 1987).
[62] 20 C.F.R. § 404.1526(a)(1987).
[63] 20 C.F.R. §§ 404.1526(e), 404.1527(e)(2).

9

equivalent to a listing, there is nothing in the medical record nor in plaintiff's testimony that would suggest that plaintiff's impairment would be equal to any other listing. "[P]laintiff bears the burden of proving his impairment meets a listing, and plaintiff must meet each of the requirements set forth in the listing."[64] At the March 9, 2000, hearing plaintiff testified that he experienced constant pain with little relief from pain relief medication.[65] The ALJ determined that although he found plaintiff's testimony to be credible, he also determined that plaintiff's daily activities did not support his claim of disabling pain.[66] Since plaintiff pointed to no evidence in the record that contradicts the ALJ's finding of not disabled, plaintiff has failed to show that the ALJ's conclusion was not supported by substantial evidence.[67]

Finally, plaintiff argues that the ALJ erred when he did not "propound" his Step-Three determination. Further, plaintiff asserts that the ALJ does not create the logical bridge from the evidence to the conclusion. In the ALJ's decision from June 25, 2001, he stated that he took into consideration the entire record..[68] "An ALJ must sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"[69] Additionally, "[t]he Court must accept findings of fact that are supported by 'substantial evidence,' where substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[70] Even if the ALJ "propounded" his step three determination and provided a more detailed analysis of his decision, more analysis would not change

---

[64] *Ribaudo v. Barnhart,* 458 F. 3d 580, 583 (7th Cir. 2006).
[65] R. 236.
[66] R. 19.
[67] *See Sims v. Barnhart* 309 F.3d 424, 429 (7th Cir. 2002).
[68] R. 19.
[69] *Carlson v. Shalala,* 999 F. 2d. 180, 181 (7th Cir. 1993).
[70] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

the fact that plaintiff's limitations do not equal a defined disability. Again, the ALJ's determination that plaintiff is not disabled is supported by plaintiff's testimony and the medical evidence within the record. Since there is agreement between the substantial evidence and the ALJ's determination, and the ALJ cites to that evidence in his written opinion, a logical bridge has been created between the evidence to the conclusion.[71]

**B.  Plaintiff is able to Perform "Light Work"**

The ALJ then determined in step five, that plaintiff could perform "light work."[72] Plaintiff argues that the ALJ erred by not reviewing and providing a detailed analysis of plaintiff's function by function exertional and non-exertional limitations. Additionally, plaintiff again argues that the ALJ did not create an accurate or logical bridge between the evidence and his conclusion that plaintiff is capable of performing light work. The Social Security Act defines light work as,

> involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."[73]

As mentioned earlier, at the March 9, 2000 hearing, plaintiff's testimony about his capabilities in conjunction with his daily routine falls within the light work category.[74] On June 27, 2000 plaintiff's physician, Dr. Rabinowitz, gave plaintiff a work release that included a restriction of lifting no more

---

[71] *See Haynes v. Barnhart,* 416 F. 3d 621, 626, (7th Cir. 2005).
[72] R. 20.
[73] 20 C.F.R. § 404.1567.
[74] R. 248-50.

11

than 20 pounds and working no more than six hours on a part-time basis.[75] An RFC assessment completed between May 5 to July 7, 2000, took into consideration plaintiff's exertional and non-exertional limitations and concluded that plaintiff could perform within the "medium work" range by September 2000.[76] Therefore, the medical evidence actually shows plaintiff's abilities to be even more extensive than that which would fall within the light work category.

"Even if an ALJ's articulation is deficient, '[n]o principle of administrative law or common sense requires [courts] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different decision.'"[77] Plaintiff's testimony along with the medical record supports the ALJ's decision that plaintiff could perform light work. Even if the ALJ wrote a more in depth analysis, it would not change the substantial evidence that supported his decision. Finally, because the evidence supported the ALJ's decision, and the ALJ cites to the reasons why he made his determination, the logical bridge between the evidence and the conclusion was established.[78]

**Conclusion**

For the reasons set forth above, the Court finds that the ALJ's June 25, 2001 decision is supported by substantial evidence. Accordingly, the Court denies plaintiff's Motion for Summary

---

[75] R. 197.
[76] R. 158-65.
[77] *Fisher v. Bowen,* 869 F. 2d 1055, 1057 (7th Cir. 1989).
[78] R. 19.

Judgment [dkt. 29], and the Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
U.S. Magistrate Judge
Susan E. Cox

Date: October 29, 2008